## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| ATARI INTERACTIVE, INC.,<br><br>    Plaintiff,<br><br> v.<br><br>THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A TO THE COMPLAINT,<br><br>    Defendants. | Case No.: 24-cv-00138 |

## COMPLAINT

Plaintiff ATARI INTERACTIVE, INC. ("Atari" or "Plaintiff") files this Complaint against the individuals, corporations, limited liability companies, partnerships, and unincorporated associations, and foreign entities identified on **Schedule A** (collectively, "Defendants"), and in support states as follows:

## Introduction

1.     This is a civil action for federal trademark infringement to combat e-commerce store operators who trade upon Plaintiff's reputation and goodwill by making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use unauthorized and unlicensed products that infringe Plaintiff's trademarks, which are covered by at least U.S. Trademark Registration Nos. 1,049,118, 1,280,536, 1,221,508, 1,050,153, 1,221,509, 1,280,537, 4,214,210, 4,324,638, 1,289,146, 2,004,406, 1,224,414, 2,553,961 (collectively, the "ATARI Trademarks") and Plaintiff's copyrights, which are covered by at least U.S. Copyright Office Registration No. VA 109-343 and No. VAu 29-718 (collectively, the "ATARI Copyrights").

1

2.    The registrations are valid, subsisting, and in full force and effect. True and correct copies of the federal copyright registration certificates for the ATARI Copyrights are attached as **Exhibit 1**. True and correct copies of the federal trademark registration certificates for the ATARI Trademarks, as well as a printout from the USPTO website evidencing Plaintiff Atari Interactive, Inc. as the owner of the ATARI Trademarks, are attached as **Exhibit 2**.

3.    Defendants are improperly advertising, marketing, and/or selling unauthorized and illegal products infringing upon Plaintiff's ATARI Copyrights and ATARI Trademarks (the "Counterfeit and Infringing Products"). By selling Counterfeit and Infringing Products that purport to be genuine and authorized products using the ATARI Copyrights and ATARI Trademarks (the "Atari Products"), Defendants cause confusion and deception in the marketplace.

4.    Plaintiff is forced to file this action to combat Defendants' coordinated counterfeiting of the ATARI Copyrights and ATARI Trademarks, as well as to protect unknowing U.S. consumers from purchasing Counterfeit and Infringing Products.

5.    The Defendants create numerous fully interactive commercial internet stores operating under the online marketplace accounts identified in Schedule A (collectively, the "Defendant Internet Stores"), including but not limited to the platforms Alibaba. Com (Alibaba), AliExpress.com (AliExpress), eBay.com ("eBay"), Redbubble.com ("Redbubble"), and Wish.com ("Wish") (collectively, the "Marketplace Platforms").

6.    The Defendants design the online marketplace accounts to appear to sell genuine ATARI Products while selling inferior imitations of such products instead.

7.    The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the counterfeit products offered for sale, establishing a logical relationship between

them and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences.

8.      Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their illegal counterfeiting operation. Plaintiff is forced to file this action to combat Defendants' counterfeiting of Plaintiff's federally registered ATARI Trademarks and infringement of ATARI Copyrights, as well as to protect unknowing consumers from purchasing Counterfeit and Infringing Products over the Internet.

9.      As a result of Defendants' actions, Plaintiff has been and continues to be irreparably damaged from the loss of its lawful trademarks to exclude others from making, using, selling, offering for sale, and importing their trademarks, and, therefore, seek injunctive and monetary relief.

10.     This Court has personal jurisdiction over each Defendant, in that each Defendant conducts significant business in Illinois and in this Judicial District, and the acts and events giving rise to this lawsuit of which each Defendant stands accused were undertaken in Illinois and in this Judicial District.

11.     In addition, each Defendant has either sold or offered to sell and ship Counterfeit and Infringing Products into this Judicial District.

### Subject Matter Jurisdiction

12.     This Court has original subject matter jurisdiction over the copyright claim pursuant to the Copyright Laws of the United States, 17 U.S.C. § 101, *et seq.*, 28 U.S.C. § 1338(a)–(b), and 28 U.S.C. § 1331.

13.     This Court has original subject matter jurisdiction over the trademark claims pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)–(b), and 28 U.S.C. § 1331.

14. This Court has jurisdiction over the uniform deceptive trade practices claim in this action that arises under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a) because the state law claim is so related to the federal claims that it forms part of the same case or controversy and derives from a common nucleus of operative facts.

**Personal Jurisdiction and Venue**

15. Personal jurisdiction exists over Defendants in this Judicial District pursuant to 735 ILCS 5/2-209, or in the alternative, Fed. R. Civ. P. 4(k), because, upon information and belief, Defendants regularly conduct, transact, and/or solicit business in Illinois and in this Judicial District; derive substantial revenue from business transactions in Illinois and in this Judicial District; and/or otherwise avail themselves of the privileges and protections of the laws of the State of Illinois such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and substantial justice.

16. In addition, Defendants' illegal counterfeiting and infringing actions have caused injury to Plaintiff in Illinois and in this Judicial District such that Defendants should reasonably expect such actions to have consequences in Illinois and this Judicial District.

17. For example, the Defendant Internet Stores accept orders of Counterfeit and Infringing Products from and offer shipping to Illinois addresses located in this Judicial District. Screenshots of the shopping cart from Defendant Internet Stores allowing Counterfeit and Infringing Products to be shipped to Illinois are attached to the Declaration of Kathryn Butters ("Butters Decl."), filed as Exhibit 3 to the Memorandum in Support of Plaintiff's *Ex Parte* Motion for a Temporary Restraining Order.

18. Moreover, upon information and belief, Defendants were and/or are systematically directing and/or targeting their business activities at consumers in the United States, including

those in Illinois, in this Judicial District, through accounts (the "User Account(s)") on e-commerce sites including the Marketplace Platforms, as well as any and all as yet undiscovered User Accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants, and all persons in active concert or participation with any of them. Through these User Accounts, consumers in the United States, including Illinois (and more particularly, in this Judicial District), can view the marketplace accounts that each Defendant operates, use them to communicate with Defendants regarding their listings for Counterfeit and Infringing Products, and use them to place orders for, receive invoices for, and purchase Counterfeit and Infringing Products for delivery in the United States, including Illinois (and more particularly, in this Judicial District), as a means for establishing regular business with the United States, including Illinois (and more particularly, in this Judicial District).

19.     Defendants have transacted business with consumers located in the United States, including Illinois (and more particularly, in this Judicial District), for the sale and shipment of Counterfeit and Infringing Products.

20.     Venue is proper in this Court pursuant to at least 28 U.S.C. §§ 1391(b)(2) and 1400(a) because Defendants have committed acts of copyright infringement in this Judicial District and do substantial business in the Judicial District.

## **The Plaintiff**

21.     Plaintiff ATARI INTERACTIVE, INC. is a Delaware corporation with its principal place of business in New York City, New York.

22.     Plaintiff is a global cross-platform licensor and interactive entertainment production company, engaged in the development of software, games, and related hardware and merchandise, including apparel.

23.　　Plaintiff is the registered owner of the ATARI Trademarks (attached as Exhibit 1) and ATARI Copyrights (attached as Exhibit 2) as follows:

| Copyright Reg. No. | Copyright | Registration Date |
|---|---|---|
| VA 109-343 | Centipede | October 18, 1982 |
| VAU 29-718 | CENTIPEDE | October 15, 1981 |

24.　　Plaintiff is the registered owner of the ATARI Trademarks (attached as Exhibit 2), as follows:

| U.S. TM Reg. No. | Trademark | Registration Date |
|---|---|---|
| 1,049,118 |  | September 28, 1976 |
| 1,280,536 |  | June 5, 1984 |
| 1,221,508 |  | December 28, 1982 |
| 1,050,153 | ATARI | October 12, 1976 |
| 1,221,509 | ATARI | December 28, 1982 |
| 1,280,537 | ATARI | June 5, 1984 |

| U.S. TM Reg. No. | Trademark | Registration Date |
|---|---|---|
| 4,214,210 |  | September 25, 2012 |
| 4,323,638 | PONG | April 23, 2013 |
| 1,289,146 | CENTIPEDE | August 7, 1984 |
| 2,00,4406 | MISSILE COMMAND | October 1, 1996 |
| 1,224,414 | ASTEROIDS | January 18, 1983 |
| 2,553,961 | BREAKOUT | March 23, 2002 |

**The Defendants**

25.     Defendants are individuals and business entities who, upon information and belief, reside mainly in the People's Republic of China or other foreign jurisdictions.

26.     Defendants are merchants on online e-commerce platforms, including the Marketplace Platforms.

**The Atari Products**

27.     Plaintiff specializes in the development, merchandising, and marketing of its proprietary and expanding portfolio of PC, console and mobile games, and has played an integral role in the development of the arcade game, game console and personal computer industries since being founded in 1972. Plaintiff's iconic games, including Pong®, Asteroids®, Centipede®, and Missile Command®, are especially popular and enjoyed by many around the world.

28.     In particular, Plaintiff has developed and marketed products incorporating the ATARI Trademarks and ATARI Copyrights ("ATARI Products"), including but not limited to: 1) articles of clothing such as t-shirts, sweatshirts, and hats, 2) printed materials such as posters,

7

stickers, and manuals for hardware and games, 3) electronic, video and multimedia game software, 4) pre-recorded video and computer game programs, cartridges, and cassettes, and 5) videogame equipment such as joysticks, processors, cables, power adapters, switch boxes, and machines.

29.     From the date of the creation of the first ATARI Products to the present, Plaintiff is and has been the sole and official source of genuine ATARI Products in the United States. ATARI Products are distributed and sold to consumers throughout the world, including in the United States and Illinois through authorized retailers, various affiliates, and the www.atari.com website.



*Examples of ATARI Products Incorporating the ATARI Trademarks and Copyrights*

30.     Since at least 1977, the ATARI Trademarks are and have been the subject of substantial and continuous marketing and promotion by Plaintiff. Plaintiff has and continues to widely market and promote ATARI Trademarks through the ATARI Products in the industry and to consumers.

31.     The registration for the ATARI Trademarks constitutes prima facie evidence of their validity and of Plaintiff's exclusive right to use the trademarks pursuant to 15 U.S.C. § 1057(b).

32.     The ATARI Trademarks qualify as a famous mark, as that term is used in 15 U.S.C. §1125 (c)(1), and they have been continuously used and never abandoned.

33.     Since Plaintiff launched the ATARI Products, the company has followed a defined strategy for positioning its brand, marketing and promoting the product line in the industry and to consumers and establishing distribution channels. Plaintiff's promotional efforts for the ATARI Products include, by way of example but not limitation, substantial print media, the atari.com website, and social media advertising campaigns. Plaintiff has expended substantial time, money, and other resources in advertising and otherwise promoting the ATARI Products.

34.     Plaintiff owns all rights, including without limitation, the rights to reproduce the copyrighted works in copies, to prepare derivative works based upon the copyrighted works, and to distribute copies of the copyrighted works to the public by sale or other transfer of ownership, or by rental, lease, or lending, in the ATARI Copyrights as the owner of those copyrights.

**The Defendants' Unlawful Conduct**

35.     The success of the ATARI Products has resulted in significant counterfeiting. Plaintiff has identified numerous Defendant Internet Stores linked to fully interactive websites on e-commerce sites including the Marketplace Platforms. These Defendant Internet Stores offer for sale, sell, and import Counterfeit and Infringing Products to consumers in this Judicial District and throughout the United States.

36.     Defendants have persisted in creating such online marketplaces and internet stores, like the Defendant Internet Stores.  In fact, such online marketplaces and stores are estimated to receive tens of millions of visits per year and to generate over $135 billion in annual online sales.

According to an intellectual property rights seizures statistics report issued by the United States Department of Homeland Security, the manufacturer's suggested retail price ("MSRP") of goods seized by the U.S. government in fiscal year 2021 was over $3.3 billion. Internet websites like the Defendant Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year.

37.     On personal knowledge and belief, Defendants facilitate sales by designing the Defendants' Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine ATARI Products. Many of the Defendants' Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards, Western Union, and PayPal. Defendant Internet Stores often include images and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website.

38.     Defendants further perpetuate the illusion of legitimacy by offering "live 24/7" customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the McAfee® Security, VeriSign®, Visa®, MasterCard®, and PayPal® logos.

39.     Plaintiff has not licensed or authorized Defendants to use the ATARI Copyrights or ATARI Trademarks, and none of the Defendants are authorized retailers of the genuine ATARI Products.

40.     On personal knowledge and belief, Defendants also deceive unknowing consumers by using without authorization the ATARI Copyrights and the ATARI Trademarks within the product descriptions, content, text, and/or meta tags of their websites to attract various search engines crawling the Internet looking for websites relevant to consumer searches for ATARI Products. Additionally, upon information and belief, Defendants use other unauthorized search

engine optimization ("SEO") tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for genuine ATARI Products. Further, Defendants utilize similar illegitimate SEO tactics to propel new domain names to the top of search results after others are shut down. As such, Plaintiff also seeks to disable the Defendant Internet Stores owned and/or operated by Defendants that are the means by which the Defendants could continue to sell Counterfeit and Infringing Products into this Judicial District.

41.     On information and belief, Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. For example, it is common practice for counterfeiters to register their domain names and/or User Accounts with incomplete information, randomly typed letters, or omitted cities or states.

42.     On personal knowledge and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their massive counterfeiting operation, and to avoid being shut down.

43.     On personal knowledge and belief, even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendants' Internet Stores.  For example, some of the Defendant marketplace websites have virtually identical layouts, even though different aliases were used to register the respective domain names.

11

44.     In addition, the Counterfeit and Infringing Products for sale in the Defendants' Internet Stores bear similarities and indicia of being related to one another, suggesting that the Counterfeit and Infringing Products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated.

45.     The Defendants' Internet Stores also include other notable common features, including accepted payment methods, check-out methods, metadata, illegitimate SEO tactics, HTML user-defined variables, domain redirection, lack of contact information, identically or similarly priced items and volume sales discounts, similar hosting services, similar name servers, and the use of the same text and images.

46.     In addition, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. For example, counterfeiters like Defendants will often register new online marketplace accounts under User Accounts once they receive notice of a lawsuit.[1]

47.     Counterfeiters also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received. Rogue servers are notorious for ignoring take down demands sent by brand owners.[2]

48.     Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection. A 2012 U.S. Customs and Border

---

[1]     https://www.ice.gov/news/releases/buyers-beware-ice-hsi-and-cbp-boston-warn-consumers-about-counterfeit-goods-during (noting counterfeiters are adept at "setting up online stores to lure the public into thinking they are purchasing legitimate good on legitimate websites").

[2] While discussed in the context of false pharma supply chains, rogue internet servers and sellers are a well-known tactic that have even been covered in congressional committee hearings. https://www.govinfo.gov/content/pkg/CHRG-113hhrg88828/html/CHRG-113hhrg88828.htm.

Protection report on seizure statistics indicated that the Internet has fueled "explosive growth" in the number of small packages of counterfeit goods shipped through the mail and express carriers.

49.     Further, counterfeiters such as Defendants typically operate multiple credit card merchant accounts and PayPal accounts behind layers of payment gateways so that they can continue operation in spite of Plaintiff's enforcement efforts.

50.      On personal knowledge and belief, Defendants maintain off-shore bank accounts and regularly move funds from their PayPal accounts to off-shore bank accounts outside the jurisdiction of this Court. Indeed, analysis of PayPal transaction logs from previous similar cases indicates that offshore counterfeiters regularly move funds from U.S.-based PayPal accounts to foreign-based bank accounts outside the jurisdiction of this Court.

51.     Defendants, without any authorization or license from Plaintiff, have knowingly and willfully used and continue to use the ATARI Copyrights and the ATARI Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit and Infringing Products into the United States and Illinois over the Internet.

52.     Each Defendant Internet Store offers shipping to the United States, including Illinois (in this Judicial District) and, on information and belief, each Defendant has either sold or offered to sell counterfeit ATARI Products into the United States, including Illinois (in this Judicial District).

53.     Defendants' use of the ATARI Copyrights and ATARI Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit and Infringing Products is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

54. Prior to and contemporaneous with their counterfeiting and infringing actions alleged herein, Defendants had knowledge of Plaintiff's ownership of the ATARI Copyrights and the ATARI Trademarks, of the fame and incalculable goodwill associated therewith and of the popularity and success of the ATARI Products, and in bad faith proceeded to manufacture, market, develop, offer to be sold, and/or sell the Counterfeit and Infringing Products.

55. Defendants have been engaging in the illegal counterfeiting and infringing actions, as alleged herein, knowingly and intentionally, or with reckless disregard or willful blindness to Plaintiff's rights, or in bad faith, for the purpose of trading on the goodwill and reputation of Plaintiff and the ATARI Products.

## **FIRST CAUSE OF ACTION**

### **COPYRIGHT INFRINGEMENT (17 U.S.C. § 101, et seq.)**
### **[Against Defendants Designated in Schedule A to the Complaint]**

56. Plaintiff repeats and incorporates by reference herein its allegations contained in paragraphs 1–55 of this Complaint.

57. Plaintiff owns all exclusive rights, including without limitation the rights to reproduce the copyrighted works in copies, to prepare derivative works based upon the copyrighted works, and to distribute copies of the copyrighted works to the public by sale or other transfer of ownership, or by rental, lease, or lending, in the ATARI Copyrights.

58. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products in connection with the ATARI Copyrights without Plaintiff's permission.

59. Defendants had access to the ATARI Products incorporating Plaintiff's registered copyrights before Defendants created the Defendant Internet Stores.

60. Upon information and belief, Defendants have directly copied the ATARI Copyrights. Alternatively, Defendants' representations of Plaintiff's copyrights for the ATARI Products in the online marketplace accounts are strikingly similar, or at the very least substantially

14

similar to the ATARI Copyrights, and constitute unauthorized copying, reproduction, distribution, creation of a derivative work, and/or public display of Plaintiff's copyrights for the ATARI Products.

61.     As just one example, Defendants deceive unknowing consumers by using the ATARI Copyrights without authorization within the product descriptions of their online marketplace accounts to attract customers as follows:

*Exemplary Images of Genuine Products Incorporating Plaintiff's Registered ATARI Copyrights*



*Compared to*



*Exemplary Images of Defendants' Listings of Counterfeit and Infringing Products*

62. Defendants' exploitation of Plaintiff's copyrights for the ATARI Products in the Defendant Internet Stores constitutes infringement of the ATARI Copyrights.

63. On information and belief, Defendants' infringing acts were willful, deliberate, and committed with prior notice and knowledge of Plaintiff's copyright. Each Defendant willfully, wantonly, and in conscious disregard and intentional indifference to the rights of Plaintiff made and distributed in the United States, including this District, caused to be made and distributed in the United States, including this District, and aided, abetted, contributed to, and participated in the unauthorized making and distribution of Counterfeit and Infringing Products.

64. Each Defendant either knew, or should have reasonably known, that images of Plaintiff's ATARI Products were protected by copyright and that their representations infringed on Plaintiff's copyrights. Each Defendant continues to infringe upon Plaintiff's rights in and to the various copyrighted works.

65. As a direct and proximate result of their wrongful conduct, Defendants have realized and continue to realize profits and other benefits rightfully belonging to Plaintiff. Accordingly, Plaintiff seeks an award of damages pursuant to 17 U.S.C. § 504.

66. In addition to Plaintiff's actual damages, Plaintiff is entitled to receive the profits made by the Defendants from their wrongful acts, pursuant to 17 U.S.C. § 504(b). Each Defendant should be required to account for all gains, profits, and advantages derived by each Defendant from their acts of infringement.

67. In the alternative, Plaintiff is entitled to, and may elect to choose statutory damages pursuant to 17 U.S.C. § 504(c), which should be enhanced by 17 U.S.C. § 504(c)(2) because of Defendants' willful copyright infringement.

68. Plaintiff is entitled to, and may elect to choose, injunctive relief under 17 U.S.C. § 502, enjoining any use or exploitation by Defendants of their infringing work and for an order under 17 U.S.C. § 503 that any of Defendants' infringing products be impounded and destroyed.

69. Plaintiff seeks and is also entitled to recover reasonable attorneys' fees and costs of suit pursuant to 17 U.S.C. § 505.

70.    Plaintiff has no adequate remedy at law, and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to their reputation and the goodwill of its well-known ATARI Copyrights.

## SECOND CAUSE OF ACTION
### TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)
### [Against Defendants Designated in Schedule A]

71.    Plaintiff hereby repeats and incorporates by reference herein its allegations set forth in the paragraphs 1–55 of this Complaint.

72.    This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the registered ATARI Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of counterfeit goods. The ATARI Trademarks contain highly distinctive marks. Consumers have come to expect the highest quality from Plaintiff's ATARI Products provided under the ATARI Trademarks.

73.    Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products in connection with the ATARI Trademarks without Plaintiff's permission.



*Exemplar of Genuine Trademarked Product Sold by Plaintiff Through Its Online Store*



*Exemplar of Counterfeit Product Sold by Defendants*

74.     Plaintiff is the registered owner of the ATARI Trademarks. The United States Registrations for the ATARI Trademarks (Exhibit 2) is in full force and effect. Upon information and belief, Defendants have knowledge of Plaintiff's rights in the ATARI Trademarks and are willfully infringing and intentionally using counterfeits of the ATARI Trademarks. Defendants' willful, intentional, and unauthorized use of the ATARI Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the counterfeit goods among the general public.

75.     Defendants' activities constitute willful trademark infringement and counterfeiting under 15 U.S.C. §§ 1114, 1117.

76.     The injuries and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit and Infringing Products.

77.     Plaintiff has no adequate remedy at law, and if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to their reputation and the goodwill of its well-known ATARI Trademarks.

### THIRD CAUSE OF ACTION
### FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))
### [Against Defendants Designated in Schedule A]

78.     Plaintiff repeats and incorporates by reference herein its allegations contained in paragraphs 1–55 of this Complaint.

79.     Defendants' promotion, marketing, offering for sale, and sale of Counterfeit and Infringing Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' Counterfeit and Infringing Products by Plaintiff.

80.     By using ATARI Trademarks in connection with the sale of Counterfeit and Infringing Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit and Infringing Products.

81.     Defendants' conduct constitutes willful false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit and Infringing Products to the general public under 15 U.S.C. §§ 1114, 1125.

82.     Plaintiff has no adequate remedy at law, and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to their reputation and the goodwill of their brand.

### FOURTH CAUSE OF ACTION
### VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
### (815 ILCS § 510/1, et seq.)
### [Against Defendants Designated in Schedule A]

83.     Plaintiff repeats and incorporates by reference herein its allegations contained in paragraphs 1–55 of this Complaint.

19

84.     Plaintiff has not licensed or authorized Defendants to use the ATARI Copyrights or the ATARI Trademarks, and none of the Defendants are authorized retailers of genuine ATARI Products.

85.     Defendants knowingly and intentionally trade upon Plaintiff's reputation and goodwill by selling and/or offering for sale products in connection with Plaintiff's ATARI Copyrights and ATARI Trademarks.

86.     Defendants' promotion, marketing, offering for sale, and sale of Counterfeit and Infringing Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the quality, affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' Counterfeit and Infringing Products by Plaintiff.

87.     Defendants knew, or should have known, that their promotion, marketing, offering for sale, and sale of Counterfeit and Infringing Products has caused and will continue to cause confusion, mistake, and deception among purchasers, users, and the public.

88.     In fact, Defendants have fraudulently represented by their statements and actions that the Counterfeit and Infringing Products are Plaintiff's products including, for example, by: (i) using SEO tactics and social media to misdirect customers seeking ATARI Products to the Defendant Internet Stores; (ii) using deceptive advertising practices within the text and metadata of the Defendant Internet Stores; and (iii) taking other steps to deceive and confuse the consuming public.

89.     On information and belief, Defendants' conduct is willful and intentional as Defendants attempt to avoid liability by concealing their identities, using multiple fictitious names and addresses to register and operate their illegal counterfeiting operations and Defendant Internet Stores.

90.     Plaintiff has no adequate remedy at law, and Defendants' conduct has caused Plaintiff to suffer damage to their reputation and goodwill. Unless enjoined by the Court, Plaintiff will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff pray for judgment against Defendants and each of them as follows:

1.      That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

      a.      using the ATARI Copyrights and ATARI Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine ATARI Product or is not authorized by Plaintiff to be sold in connection with the ATARI Copyrights and ATARI Trademarks;

      b.      passing off, inducing, or enabling others to sell or pass off any product as the genuine ATARI Products or any other product produced by Plaintiff that is not Plaintiff's or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the ATARI Copyrights and ATARI Trademarks;

      c.      committing any acts calculated to cause consumers to believe that Defendants' Counterfeit and Infringing Products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

      d.      further infringing the ATARI Copyrights and ATARI Trademarks and damaging Plaintiff's goodwill;

      e.      otherwise competing unfairly with Plaintiff in any manner;

      f.      shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner,

products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which copy the ATARI Copyrights and ATARI Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof;

g. using, linking to, transferring, selling, exercising control over, or otherwise owning any online marketplace accounts, the Defendant Domain Names, or any other domain name or online marketplace account that is being used to sell or is the means by which Defendants could continue to sell Counterfeit and Infringing Products; and

h. operating and/or hosting online marketplace accounts at the Defendant Internet Stores that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product referencing the ATARI Copyrights and ATARI Trademarks, or any reproduction, counterfeit copy or colorable imitation thereof that is not a genuine ATARI Product or not authorized by Plaintiff to be sold in connection with the ATARI Copyrights and ATARI Trademarks.

2. Entry of an Order that the Marketplace Platforms, including without limitation Alibaba, AliExpress, eBay, Redbubble, and Wish, and any other online marketplace account through which Defendants are selling Counterfeit and Infringing Products:

a. disable and cease providing services for any accounts through which Defendants engage in the sale of Counterfeit and Infringing Products, including any accounts associated with the Defendants listed on Schedule A;

b. disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of Counterfeit and Infringing Products; and

22

    c.    take all steps necessary to prevent links to the Defendant Internet Stores identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Internet Stores from any search index.

3.    That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the ATARI Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4.    In the alternative, that Plaintiff be awarded statutory damages of not more than $30,000 for each and every infringement of the ATARI Copyrights pursuant to 17 U.S.C. § 504(c), which should be enhanced to a sum of not more than $150,000 by 17 U.S.C. § 504(c)(2) because of Defendants' willful copyright infringement and not less than $1,000 and not more than $2,000,000 for each and every use of the ATARI Trademarks and statutory damages of not less than $750 pursuant to 15 U.S.C. § 1117(c);

5.    That Plaintiff be awarded its reasonable attorneys' fees and costs; and

6.    Award any and all other relief that this Court deems just and proper.

Dated: January 5, 2024

By: */s/ Samantha Parrish*
Samantha Parrish (NDIL No. 318681)
BOIES SCHILLER FLEXNER LLP
2029 Century Park East, Suite 1520
Los Angeles, CA 90067
(213) 995-5715
sparrish@bsfllp.com

*Attorney for Plaintiff Atari Interactive, Inc.*